O’NIELL, J.
Plaintiffs brought two petitory actions, claiming a tract of 91.87 acres of land which they say was added to the area of their plantation by changes made in the .course of Red river. The first suit is against E. T. Robinson, in possession of the southern part, being 29.20 acres, of the land in contest, and against the Oliver Oil Company holding a mineral lease on that part of the land. The second suit is against the Kennedy heirs, in possession as owners of the northern part, being 62.67 acres, of the land in contest, and against the Gulf Refining Company holding a mineral lease on that part of the land. It appears that the Gulf Refining Company has acquired whatever rights the Oliver Oil Company had under the léase from Robinson, and is now therefore defendant in both suits. The issues in the two cases being substantially the same, they were, by consent of all parties, consolidated and tried as one case. Judgment was rendered in favor of the defendants in both cases, and the plaintiffs have appealed.
When that part of the township in which the land in contest is situated w.as surveyed for the government in 1826 and in 1832, Red river, in its southward course, curved towards the west then south, then east, making a horseshoe bend. Plaintiffs’ ancestors in title acquired from the government, and plaintiffs therefore now own, the peninsula in the horseshoe bend, described as lots 1, 2, 3, and 4, in section 23, T. 13 N., R. 11 W. Robinson’s ancestors in title acquired from the government, and he now owns, the land lying south of the peninsula and bordering on the river, including lots 4, 5, 6, 11 and 12 of section 26 and lots 1 to 13, inclusive, of section 25, in the same township. The ancestors in title of the Kennedy heirs acquired, and the heirs now own, that part of sections 23 and 24, in the same township, lying north and west of the peninsula and bordering on the river. The peninsula was known as Stallings Bend plantation. H. M. Stallings, being the original owner of the property, established the plantation in 1857, and lived on it with his family from 1868 until 1880, when he and his wife died, leaving three heirs. They divided the land in kind, the western part of the peninsula, including the place where the subsequent change in the course of the river occurred, being allotted to Mrs. Almeda 'Stallings McDonald, *655 from whom the plaintiffs in this suit hold title by mesne conveyances.
As far back as goes the memory of the oldest inhabitants of the vicinity, the river, in its natural tendency to straighten its southward course, was closing in on the peninsula and gradually eating away both the north and south side of it near the eastern or open end of the Stallings Bend plantation. This eroding process was also gradually building up a batture, or accretion, on the opposite bank of the river, increasing the area of the Kennedy plantation above the peninsula, on the north side of the river, and increasing the area of the Robinson plantation, below the peninsula, on the south side of the river. The government surveys made in 1826 and in 1832 show that the peninsula was then about 1,300 feet wide, measuring the width in a north and south direction, at the narrowest place, across the east end of Stallings Bend plantation. Sixty or seventy years later the width of the peninsula at that place had dwindled to 500 or 600 feet. In 1902 the width was only about 50 feet, and in that year it was reduced to about 20 feet. The ends of the horseshoe, so to speak, were gradually closing in on the east end of Stallings plantation, squeezing it to a point and adding the dereliction or accretion to the Kennedy plantation on the north side of the horseshoe and to the Robinson plantation on the south side. In December, 1902, the bank between the two beds of the river had become so narrow and weak that the partition caved in and there was a sudden meeting of the waters, along a line of about 1,300 feet. The break occurred at the east end of Stallings Bend plantation, through the land now owned by plaintiffs. Thereafter a levee was constructed, on which a public road was built, extending in a northern and southern, or rather northeastern and southwestern, direction, across the east end of Stallings Bend | plantation, where the river had acquired a 'double width- The horseshoe bend, west of the levee, was thereby converted into a cutoff lake, and Stallings Bend plantation was' then bounded on the north, west and south by the cut-off or horseshoe lake, and on the east by the levee or west bank of the new bed of the river. Thereafter the river, in its newly formed bed, and in its natural tendency to straighten its southward course, receded eastward from the levee, leaving an accretion along the east side of the levee at what had formerly been the east end of Stallings Bend plantation. The land in controversy is therefore the area extending eastward from the levee to the west bank of the river in its present location, and extending southward from the southern boundary of the original Kennedy plantation to the northern boundary of the original Robinson plantation.
Plaintiffs claim this land partly by virtue of article 518 and partly by virtue of articles 509 and 510 of' the Civil Code.
Article 518 declares:
“If a river or stream, whether navigable or not, opens itself a new bed by leaving its former channel, the owners of the soil newly occupied shall take, by way of indemnification, the former bed of the river, every one in proportion to the quantity of land he has lost.”
Article 509 declares:
“The accretions, which are formed successively and imperceptibly to, any soil situated on the shore .of a river or other stream, are called alluvion.
“The alluvion belongs to the owner of the soil situated on the edge of the water, whether it be a river or stream, and whether the same be navigable or not, who is bound to leave public 'that portion of the bank which is required by law for the public use.”
Article 510 declares:
“The same rule applies to derelictions formed by running water retiring imperceptibly from one of its shores and encroaching on the other; the owner of the land, adjoining the shore *657 which is left dry, has a right to the dereliction, nor can the owner of the opposite shore claim the land which he has lost.”
[1] The major part of the area In controversy is space that was occupied by the river when it had acquired a double width by the caving in of the narrow partition between the two beds of the river. That space, however, was not acquired by the plaintiffs by virtue of article 518 of the Code, because the river did not, as an immediate result of the break in the bank, “open itself a new bed by leaving its former channel.” The former channel was not left vacant, but the two beds of the river came together, occupying as much space as they had occupied before. The double-width river bed east of the levee was thereafter vacated by the water, not by the sudden process described in article 518 of the Code, but by the gradual process described in articles 509 and 510; that is, by the process of accretion, the formation of alluvi■on, or leaving dereliction, formed by the running water retiring imperceptibly from its newly built west shore and encroaching upon its east shore. According to article 509, the alluvion thus formed between the levee and the river “belongs to the owner of the soil situated. on the edge of the water;” or, as article 510 expresses it, “the owner of the land adjoining the shore which is left dry has a right to the dereliction.” At the time the alluvion or dereliction began forming, after the caving in of the river bank and the construction of the levee across the double-width river, the Kennedy heirs owned “the soil situated on the edge of the water” on the north and west side of the river, and Robinson owned “the soil situated on the edge of the water” on the south and west side of the river. In other words, the Kennedy heirs, on the north 'side of the land in contest, are, as article 510 expresses it, “the owners of the land adjoining the shore which is left dry”; and Robinson, on the south side of the land in contest, is “the owner of the land adjoining the shore which is left dry.” It is very doubtful whether it can bo said that, after the bank of the river had caved in and the levee was built across the double-width river, the plaintiffs in 'this suit were, as article 509 says, “the owners of the soil situated on the edge of the water,” or that the plaintiffs were, as article 510 says, “the owners of the land adjoining the shore which was left dry;” because, as shown by the map on which the plaintiffs base this suit, when the river caved in and the levee was constructed across the double-width river, the Stallings Bend plantation came to a point at its east end a considerable distance west from the levee, and the old river or cutoff lake flowed on both sides of the point and beyond it eastward to the levee. Be that situation as it may, the district judge, in his decree, has reserved to plaintiffs whatever right of action they may have for accretion or alluvion that has formed since the river bank caved in, in December, 1902. And we are not called upon by the appellees to disturb that reservation in the judgment appealed from.
[2] Plaintiffs’ counsel contend that we ought to give them judgment for whatever land they have acquired by accretion between the east end of their land and the present west bank of Red river, which is now about a quarter of a mile from the east end of their land. But we agree with the district judge that it is impossible, under the evidence in this case, to render such judgment, because the plaintiffs, claiming title indiscriminately under article 518 and under articles 509 and 510 of the Code, did not undertake to segregate or distinguish the land which they claim by accretion ’ from that which they claim by virtue of article 518 of the Code. They are not entitled to recover *659 any land under or by virtue of article 518, and we doubt that they are entitled to recover any land by virtue of articles 509 and 510 on the east side of the levee, where the entire tract sued for is located.
It is virtually conceded in the brief of counsel for appellants that the Kennedy heirs are entitled to whatever accretions had formed on the north side of the river, above the peninsula, before the caving in of the river bank occurred in December, 1902, and that Robinson is entitled to whatever accretions had formed on the south side of the river, below the peninsula, before the break in the river bank occurred in December, 1902. It is also conceded that the depth of each plantation, the Kennedy place on the north and the Robinson place on the south, was, by right of accretion, increased approximately 400 feet before the caving in of the river bank, and we judge from the evidence that the increase in depth of the Kennedy plantation was considerably more than 400 feet before the river bank caved in. Our conclusion is that the judgments appealed from are correct.
The judgments are affirmed, at appellants’ cost.